

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**March 30, 2021 16:53**

By: CHRISTOPHER P. WIDO 0090441

Confirmation Nbr. 2216901

JOZETTE BROWN                                     CV 21 945723

     vs.

RESERVE APARTMENTS, LTD., ET AL.        **Judge:**  SHERRIE MIDAY

**Pages Filed:**  18

| EXHIBIT |
| :---: |
| **1** |

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| JOZETTE BROWN | ) | CASE NO. |
| 2375 E 40th St Apt D | ) | |
| Cleveland, Ohio 44104 | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| RESERVE APARTMENTS, LTD | ) | |
| c/o K&D Management, LLC, statutory agent | ) | **JURY DEMAND ENDORSED** |
| 4420 Sherwin Road | ) | **HEREIN** |
| Willoughby, Ohio 44094 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| K&D MANAGEMENT, LLC | ) | |
| c/o K&D Management, LLC, statutory agent | ) | |
| 4420 Sherwin Road | ) | |
| Willoughby, Ohio 44094 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| ASHLEY CROSS-PETTIT | ) | |
| 1701 East 12th Street | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Jozette Brown, by and through undersigned counsel, as her Complaint against the

Defendants, states and avers the following:

**PARTIES AND VENUE**

1.    Brown is a resident of the city of Cleveland, County of Cuyahoga, State of Ohio.

2.    Reserve is a domestic limited company with its principal place of business located at 1701 E

    12th St, Cleveland, Ohio 44114 ("Cleveland Location").

3.    K&D is a domestic limited liability company with its principal place of business located at

    4420 Sherwin Road Willoughby, Ohio 44094.



4.   Cross-Pettit is a resident of the State of Ohio.

5.   Cross-Pettit is and was at all times hereinafter mentioned a housekeeping manager for Reserve, who acted directly or indirectly in the interest of Reserve in relation to its employees.

6.   At times relevant herein, Cross-Pettit supervised and/or controlled Brown's employment with Reserve and was empowered to take tangible employment actions against Brown.

7.   At all times referenced herein, Cross-Pettit was an employer within the meaning of Ohio O.R.C. § 4112.01 (A)(2).

8.   All of the material events alleged in this Complaint occurred in Cuyahoga County.

9.   Therefore, personal jurisdiction is proper over Defendants pursuant to Ohio Revised Code §2307.382(A)(1) and (4).

10.  Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

11.  This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## **FACTS**

12.  At all times relevant herein, K&D and Reserve shared common managers.

13.  At all times relevant herein, K&D and Reserve were registered with the Secretary of State through the same statutory agent, and share the same registered business address.

14.  At all times relevant herein, K&D and Reserve were engaged in the same business of operating and leasing rental properties in Northeast Ohio.

15.  At all times relevant herein, K&D exercised control over Reserve's employment and labor relations and Reserve's employees frequently consulted with K&D's human resources department regarding human resource policies.



16. At all times relevant herein, K&D was the majority owner of Reserve.

17. At all times relevant herein, K&D and Reserve are integrated enterprises for the purpose of the Family Medical Leave Act ("FMLA")(K&D and Reserve are hereinafter collectively referred to as "Reserve").

18. Brown is a former employee of Reserve.

19. Reserve hired Brown as a custodian on or around May 25, 2019.

20. At all times relevant herein, Brown was over the age of 50.

21. Brown has Uterine Fibroids ("Fibroids").

22. As a result of Brown's Fibroids, Brown occasionally experiences debilitating pain, severe blood loss, and anemia.

23. Brown's Fibroids affects her reproductive body system.

24. Brown's Fibroids is a physiological disability.

25. As a result of the occasional debilitating pain from her Fibroids, Brown's Fibroids impacts one or more of her major life activities, including working.

26. Brown has a record of her Fibroids.

27. Despite her Fibroids, Brown was able to perform the essential functions of her job.

28. As a result of suffering from her Fibroids, Brown is and was considered disabled within the meaning of O.R.C § 4112.01(A)(13).

29. Upon hire, Brown disclosed her Fibroids to Reserve and K&D.

30. In or around April 2020, Reserve moved Cross-Pettit to the nighttime housekeeping manager position at the Cleveland Location.

31. Upon information and belief, Cross-Pettit is in her 30's.

32. Cross-Pettit is significantly younger than Brown.

The Employee's Attorney.™



33. Upon information and belief, Brown was the oldest night-time custodian employed by Reserve at the Cleveland Location.

34. Upon information and belief, the age range for Reserve's night-time custodians, at the Cleveland Location, excluding Brown, is between 20 and 40 years old.

35. Upon information and belief, Brown was significantly older than the other night-time custodians employed by Reserve at the Cleveland Location.

36. After Cross-Pettit became Brown's supervising housekeeping manager, she began treating Brown less favorably than younger similarly situated Custodians ("Unfavorable Treatment").

37. The Unfavorable Treatment included Cross-Pettit blaming Brown for rooms that were not cleaned, when Brown was not scheduled to work the day the room was scheduled to be cleaned.

38. The Unfavorable Treatment included Cross-Pettit going out of her way to criticize Brown's work.

39. The Unfavorable Treatment included Cross-Pettit nit-picking Brown's work to a heightened degree.

40. Cross-Pettit did not engage in conduct similar to the Unfavorable Treatment with similarly situated employees who were significantly younger than Brown.

41. Cross-Pettit engaged in the Unfavorable Treatment because Brown is significantly older than similarly situated employees.

42. On or around October 10, 2020, Brown complained about the Unfavorable Treatment to Lauren, Last Name Unknown, Reserve's property manager ("Harassment Complaint").

43. Upon information and belief, Reserve has a policy against treating employees in a disparate manner based on the employee's protected class ("Harassment Policy").

44. Brown's Harassment Complaint was a complaint of violations of Reserve's Harassment Policy.



45.     Upon information and belief, Reserve has a policy to investigate complaints of violations of the Harassment Policy ("Investigation Policy").

46.     Pursuant to Reserve's Investigation Policy, an investigation should include interviewing the complainant.

47.     Pursuant to Reserve's Investigation Policy, an investigation should include interviewing the subject of the complaint.

48.     Pursuant to Reserve's Investigation Policy, an investigation should include interviewing the subject of the reported discrimination.

49.     Pursuant to Reserve's Investigation Policy, an investigation should include interviewing witnesses to the reported discrimination.

50.     Pursuant to Reserve's Investigation Policy, an investigation should include getting a written statement from the complainant.

51.     Pursuant to Reserve's Investigation Policy, an investigation should include getting a written statement from the subject of the complaint.

52.     Pursuant to Reserve's Investigation Policy, an investigation should include getting a written statement from the subject of the reported discrimination.

53.     In response to Brown's Harassment Complaint, Reserve did not interview Brown.

54.     In response to Brown's Harassment Complaint, Reserve did not interview Cross-Pettit.

55.     In response to Brown's Harassment Complaint, Reserve did not get a written statement from Brown.

56.     In response to Brown's Harassment Complaint, Reserve did not get a written statement from Cross-Pettit.

57.     Reserve did not investigate Brown's Harassment Complaint.

The Employee's Attorney.™



58. Reserve did not discipline Cross-Pettit based on the Harassment Complaint.

59. By not disciplining Cross-Pettit based on the Harassment Complaint, Reserve ratified Shane's conduct.

60. By not disciplining Cross-Pettit based on the Harassment Complaint, Reserve allowed Cross-Pettit's conduct to continue.

61. Following the Harassment Complaint, Cross-Pettit continued the Unfavorable Treatment.

62. Upon information and belief, Cross-Pettit learned about and/or was aware of Brown's Harassment Complaint.

63. On or around October 13, 2020, Brown began experiencing complications from her Fibroids which resulted in her hospitalization ("Hospitalization").

64. Brown texted Cross-Pettit and informed her of the Hospitalization.

65. Brown texted Cross-Pettit asking for time off for the Hospitalization and recovery ("Accommodation Request").

66. Following the Accommodation Request, Cross-Pettit had knowledge of Brown's Fibroids.

67. Following the Accommodation Request, Cross-Pettit knew that Brown is disabled.

68. Alternatively, following the Accommodation Request, Cross-Pettit perceived that Brown's Fibroids impacts one or more of her major life activities, including working.

69. Alternatively, following the Accommodation Request, Cross-Pettit perceived Brown as disabled.

70. Cross-Pettit had a duty to report the Accommodation Request to Reserve.

71. Cross-Pettit did report the Accommodation Request to Reserve.

72. Brown's Accommodation Request was reasonable.

73. Brown's Accommodation Request did not cause an undue hardship on Reserve.

The Employee's Attorney.™



74. Reserve did not determine if Brown's Accommodation Request would cause an undue hardship.

75. Reserve has no contemporaneously created documents reflecting any effort to determine if Brown's Accommodation Request would cause an undue hardship.

76. After the Accommodation Request, no one at Reserve engaged in an interactive process to find a reasonable accommodation for Brown's disability.

77. Defendants violated O.R.C. 4112.01 *et seq.* when no one at Reserve engaged in an interactive process to find a reasonable accommodation for Brown's disability.

78. As of October 13, 2020, Brown worked for Reserve for at least 12 months.

79. As of October 13, 2020, Brown had at least 1,250 hours of service for Reserve during the previous 12 months.

80. As of October 13, 2020, Defendants employed over 50 employees within a 75 mile radius.

81. As of October 13, 2020, Defendants were covered employers pursuant to the FMLA.

82. As of October 13, 2020, Brown was eligible to utilize FMLA leave.

83. Brown's Fibroids is a serious medical condition.

84. Brown's Fibroids is an FMLA qualifying condition.

85. As of October 13, 2020, Brown was entitled to utilize FMLA leave for the Hospitalization and her Fibroids.

86. Brown provided Defendants with sufficient notice that she was going to be absent from work for an FMLA qualifying reason.

87. Defendants did not notify Brown that she was eligible for FMLA leave for the Hospitalization and her Fibroids.

88. Brown's Hospitalization lasted from October 13, 2020 to October 15, 2020.



89. On October 15, 2020, Brown's treating physician released Brown from the hospital with orders to stay at home for an additional day to recover from the complications of her Fibroids ("Medical Restrictions").

90. On October 15, 2020, Brown informed Cross-Pettit that she had been released from the hospital and of her Medical Restrictions.

91. On October 15, 2020, Cross-Pettit ordered Brown to return to work that day.

92. Brown informed Cross-Pettit that she was unable to immediately return to work due to the Medical Restrictions due to her Fibroids.

93. Cross-Pettit never offered Brown FMLA leave after Brown informed Cross-Pettit of the Medical Restrictions.

94. Upon Brown informing Cross-Pettit that she was unable to come to work on October 15 due to the Medical Restrictions, Cross-Pettit told Brown that Defendants were terminating Brown's employment due to alleged attendance issues.

95. Upon information and belief, Reserve has a progressive disciplinary policy ("Discipline Policy").

96. Upon information and belief, the Discipline Policy calls for escalating levels of discipline for infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

97. Reserve had never issued Brown a verbal warning for alleged attendance issues pursuant to the Discipline Policy.

98. Reserve had never issued Brown a written warning for alleged attendance issues pursuant to the Discipline Policy.



99. Reserve had never issued Brown a final written warning for alleged attendance issues pursuant to the Discipline Policy.

100. Reserve had never issued Brown a suspension for alleged attendance issues pursuant to the Discipline Policy.

101. Prior to terminating Brown, Reserve never issued any written communication to Brown criticizing Brown's attendance.

102. To the extent Brown had missed work, such absences were due to her Fibroids.

103. To the extent Brown had missed work, such absences would have been covered by FMLA protected leave.

104. Defendants knew that to the extent that Brown had missed work, such absences were due to her Fibroids.

105. Defendants' assertion of attendance issues did not actually motivate Defendants' decision to terminate Brown.

106. Defendants' assertion of attendance issues was insufficient to motivate the termination of Brown.

107. Defendants' assertion of attendance issues was pretext to terminate Brown.

108. Defendants did not terminate non-disabled employees for alleged attendance issues due to hospitalization.

109. Defendants terminated Brown based on her Fibroids.

110. Defendants did not terminate employees who were substantially younger than Brown for alleged attendance issues due to hospitalization.

111. Defendants terminated Brown based on her age.



112. Defendants did not terminate employees who had not made complaints similar to the Harassment Complaint for alleged attendance issues due to hospitalization.

113. Defendants terminated Brown based on her Harassment Complaint.

114. Defendants terminated Brown because she asked for leave that would have been protected by the FMLA.

115. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Brown.

116. Defendants knowingly skipped progressive disciplinary steps in terminating Brown.

117. Defendants knowingly terminated Brown's employment.

118. Defendants knowingly took an adverse employment action against Brown.

119. Defendants knowingly took an adverse action against Brown.

120. Defendants intentionally skipped progressive disciplinary steps in terminating Brown.

121. Defendants intentionally terminated Brown's employment.

122. Defendants intentionally took an adverse employment action against Brown.

123. Defendants intentionally took an adverse action against Brown.

124. Defendants knew that skipping progressive disciplinary steps in terminating Brown would cause Brown harm, including economic harm.

125. Defendants knew that terminating Brown would cause Brown harm, including economic harm.

126. Defendants willfully skipped progressive disciplinary steps in terminating Brown.

127. Defendants willfully terminated Brown's employment.

128. Defendants willfully took an adverse employment action against Brown.

129. Defendants willfully took an adverse action against Brown.



130. Upon information and belief, subsequent to Brown's termination, Defendants hired Saundra Last Name Unknown to replace Brown.

131. Upon information and belief, Saundra is in her 20's.

132. Upon information and belief, Saundra is not disabled.

133. The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

134. The above facts demonstrate that Defendants engaged in a pattern and practice of age discrimination.

135. There was a causal connection between Brown's disability and Defendants' termination of Brown.

136. There was a causal connection between Brown's age and Defendants' termination of Brown.

137. As a direct and proximate result of Defendants' conduct, Brown suffered and will continue to suffer damages.

## COUNT I: DISABILITY DISCRIMINATION.

138. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. Defendants were aware that Brown suffered from an actual disability or physical impairment, and/or perceived Brown to suffer from a disability or physical impairment.

140. Pursuant to O.R.C. § 4112.02(A), it shall be unlawful "for any employer, because of the …disability…of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."



141. Defendants violated O.R.C. § 4112.02(A) when they terminated Brown because of her disability.

142. In *Johnson v. Cleveland City School Dist.*, 2011-Ohio-2778, ¶ 60 (8th Dist. Cuyahoga), the Eighth District Court of Appeals explained that "[a] plaintiff who has established that he is disabled for R.C. 4112.02 purposes may further establish a discrimination claim by showing that the employer has declined to make a reasonable accommodation to known disabilities if such accommodation would not cause undue hardship on the employer."

143. Defendants failed to engage in the interactive process of determining whether Brown needed an accommodation.

144. Defendants failed to provide an accommodation to Brown

145. Defendants terminated Brown following her Accommodation Request.

146. Defendants violated O.R.C. § 4112.02 by failing to provide Brown a reasonable accommodation.

147. As a result of Defendants' discrimination against Brown in violation of O.R.C. § 4112.02(A), Brown has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

148. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Brown, thereby entitling Brown to an award of punitive damages.

149. To remedy the violations of the rights of Brown secured by O.R.C. § 4112.02(A), Brown requests that the Court award her the relief demanded below.



## COUNT II: INTERFERENCE WITH EXERCISE OF RIGHTS IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT.

150. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. Brown's hospitalization was an FMLA qualifying event.

152. Defendants unlawfully interfered with Brown's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations by failing to notify Brown of her rights under the FMLA; by failing to provide Brown with FMLA leave; and by terminating Brown's employment for absences that should have been covered by the FMLA had Defendants provided Brown with FMLA leave.

153. As a direct and proximate cause of Defendants' wrongful conduct, Brown suffered and will continue to suffer damages.

154. As a direct and proximate cause of Defendants' wrongful conduct, Brown is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT III: RETALITION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT.

155. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. The FMLA provides that "[i]t shall be unlawful for any employer to discharge ... any individual for opposing any practice made unlawful by" the FMLA.

157. Brown engaged in an activity protected by the FMLA when she notified Defendants that she required leave due to her hospitalization and complications from her fibroids.

158. Defendants knew that Brown was seeking leave for an FMLA qualifying condition.



159. After Brown sought leave for her hospitalization and for complications from her fibroids, Defendants took adverse action against Brown by terminating her employment.

160. There was a causal connection between Brown's protected activity and her termination, as Defendants stated reason for terminating Brown was "absenteeism" when Brown was absent for FMLA qualifying reasons.

161. As a direct and proximate cause of Defendants' wrongful conduct, Brown suffered and will continue to suffer damages.

162. As a direct and proximate cause of Defendants' wrongful conduct, Brown is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

**COUNT IV: AGE DISCRIMINATION IN VIOLATION OF O.R.C. § 4112.01 *et seq*.**

163. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

164. Brown is currently 50 years old.

165. At all times relevant, Brown was a member of a statutorily-protected class under O.R.C. §4112.14(B).

166. Defendants treated similarly situated, younger custodians more favorably than Brown.

167. Defendants treated Brown differently from other similarly situated employees based on her age.

168. As of October 15, 2020, Brown was fully qualified for her position and employment with the Defendants.

169. Brown, at age 50, was a member of a statutorily-protected class under O.R.C. § 4112.14(B) at the time she was terminated from her employment with the Defendants.

The Employee's Attorney.™

14



170. After terminating Brown, the Defendants replaced Brown with a person who was significantly younger and/or not belonging to the protected class under O.R.C. §4112.14(B).

171. The Defendants violated O.R.C. §4112.02 and O.R.C. § 4112.99 by discriminating against Brown based on her age.

172. As a result of Defendants' discrimination against Brown in violation of O.R.C. § 4112.02(A), Brown has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

173. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Brown, thereby entitling Brown to an award of punitive damages.

174. To remedy the violations of the rights of Brown secured by O.R.C. § 4112.02(A), Brown requests that the Court award her the relief demanded below.

### COUNT V: RETALIATORY DISCRIMINATION IN VIOLATION OF O.R.C. § 4112.02(I)

175. Brown restates each and every prior paragraph of this complaint, as if it were fully restated herein.

176. As a result of the Defendants' discriminatory conduct described above, Brown complained about the discrimination she was experiencing.

177. Subsequent to Brown's Harassment Complaint, Defendants terminated Brown.

178. Defendants' actions were retaliatory in nature based on Brown 's opposition to the unlawful discriminatory conduct.

179. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"



180. As a result of Defendants' discrimination against Brown in violation of O.R.C. § 4112.02(I), Brown has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

181. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Brown, thereby entitling Brown to an award of punitive damages.

182. To remedy the violations of the rights of Brown secured by O.R.C. § 4112.02(I), Brown requests that the Court award her the relief demanded below.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Jozette Brown demands from Defendants the following:

(a) An order directing Defendant to place Brown in the position she would have occupied but for Defendants' discriminatory treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Brown;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Brown for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) An award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(iii);

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Brown for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(e) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Brown for harm to her professional and personal reputation and loss of career fulfillment;

(f) An award of damages for any and all other monetary and/or non-monetary losses suffered by Brown in an amount to be determined at trial, plus prejudgment interest;

(g) An award of punitive damages;

The Employee's Attorney.™



(h) An award of costs that Brown has incurred in this action, as well as Brown's reasonable attorneys' fees to the fullest extent permitted by law; and

(i) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/Chris P. Wido*
Chris P. Wido (0090441) (Trial Counsel)
Samuel B. Robb (0099035)
THE SPITZ LAW FIRM, LLC
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: Chris.Wido@spitzlawfirm.com
        Sam.Robb@spitzlawfirm.com

*Attorneys For Plaintiff Jozette Brown*



## **JURY DEMAND**

Plaintiff Jozette Brown demands a trial by jury by the maximum number of jurors permitted.

/s/Chris P. Wido
Chris P. Wido (0090441)

*Attorney For Plaintiff Jozette Brown*



| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV21945723 | D1 CM | 44046328 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

JOZETTE BROWN **PLAINTIFF**
**VS**
RESERVE APARTMENTS, LTD., ET AL. **DEFENDANT**

# SUMMONS

RESERVE APARTMENTS, LTD
C/O K&D MANAGEMENT, LLC, STAT AGENT
4420 SHERWIN ROAD
WILLOUGHBY OH 44094

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

**Plaintiff's Attorney**

SAM ROBB
25200 CHAGRIN BLVD STE 200

CLEVELAND, OH 44122-0000

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

**Case has been assigned to Judge:**

SHERRIE MIDAY
**Do not contact judge. Judge's name is given for attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas





| DATE SENT |
|---|
| Mar 31, 2021 |

By_____
Deputy

COMPLAINT FILED    03/30/2021

CMSN130

**SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER**

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV21945723 | D2 CM | 44046329 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

JOZETTE BROWN **PLAINTIFF**
**VS**
RESERVE APARTMENTS, LTD., ET AL. **DEFENDANT**

# SUMMONS

K&D MANAGEMENT, LLC
C/O K&D MANAGEMENT, LLC, STAT AGENT
4420 SHERWIN ROAD
WILLOUGHBY OH 44094

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

Plantiff's Attorney

SAM ROBB
25200 CHAGRIN BLVD STE 200

CLEVELAND, OH 44122-0000

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Case has been assigned to Judge:**

SHERRIE MIDAY
**Do not contact judge. Judge's name is given for
attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas



| DATE SENT |
|---|
| Mar 31, 2021 |

By _____
Deputy



COMPLAINT FILED   03/30/2021

CMSN130